## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FT WORTH DIVISION

| | |
|---|---|
| **ALARM FUNDING ASSOCIATES, LLC, a Maryland company,** 235 Schilling Circle, Suite 107 Cockeyesville, MD  21030<br><br>        **Plaintiff,**<br>   vs.<br><br>**REPUBLIC ALARM GROUP, LLC REGISTERED AGENT:** Krista Say 7517 Howling Coyote Lane Fort Worth, TX 76131<br><br>and<br><br>**PHOXAY SAYSANAM** 1208 Realoaks Dr Fort Worth, TX 76131-3378<br><br>        **Defendants.** | **Civil Action No.** |

## COMPLAINT AND REQUEST FOR JURY TRIAL

Now Comes Plaintiff, ALARM FUNDING ASSOCIATES, LLC, by and through its undersigned counsel, complaining of Defendants REPUBLIC ALARM GROUP and PHOXAY SAYSANAM, as follows:

### Parties

1.     Plaintiff Alarm Funding Associates, LLC is a Maryland limited liability company with its principal office and place of business located in Cockeyesville, Maryland and Pennsylvania.

2.     Defendant, Republic Alarm Group, LLC ("Republic") is a Texas limited liability company with its principal place of business in Tarrant County, TX.

3.      Defendant Phoxay Saysanam is an individual who resides in Tarrant County, TX.

## Jurisdiction and Venue

4.      Defendants reside in Tarrant County, TX and are therefore subject to the jurisdiction of this court.

5.      Diversity jurisdiction over Plaintiff's claims is proper under 28 U.S.C. §1332.

6.      Venue is proper within the Ft. Worth Division of the Northern District of Texas because all or substantially all of the events giving rise to Plaintiff's claims for relief occurred within this district and division.

## Background Facts

7.      AFA is an alarm security funding and acquisition company.

8.      Defendant Republic[1] is engaged in the sale, installation and monitoring of residential and commercial burglar and fire alarm systems in the State of Texas.

9.      AFA regularly purchases alarm contracts from dealers like Defendant Republic in order to provide dealers with capital for operations.

10.     In doing so, AFA and the dealer hold AFA out to the dealer's customers as a new billing and collections specialist for the dealer, but in reality, AFA actually owns the dealer contracts.

---

[1] Defendant will refer to Defendant Republic; otherwise, Saysanam will be referred to by name.

11.     This business model enables dealers, like Defendant, to maintain their relationships with their customer base even though they have sold the customer contracts to AFA.

12.     The business model is advantageous to dealers like Republic because it allows them to generate additional revenue through service calls or referrals generated by the very same customer base it no longer owns.

13.     However, AFA's business model also depends on preserving the goodwill of the customer base to insure the customer base will continue to make monthly payments in the future.

14.     To that end, AFA's dealers and respective owners are contractually required to take and avoid certain actions.

**AFA/Republic Contracts**

15.     Defendant sold over 3700 customer accounts to AFA through a series of agreements in exchange for initial payments from AFA to Republic in excess of $7 million.

16.     AFA and Republic signed 22 Account Purchase and Sale Agreements ("APSAs") in which AFA purchased some of Defendant's customer accounts.

17.     Defendant Saysanam executed the APSAa on behalf of Republic.

18.     The APSAs required AFA to pay a multiple of recurring monthly revenue generated by each account to Republic. In exchange, AFA acquired the customer accounts and the associated right to receive all future revenues from each account..

19.     AFA purchased a total of 3,742 customer accounts from Republic (collectively referred as the "Portfolio").

20.     The APSAs contain virtually identical terms.[2]

## Qualifying Accounts

21.     Pursuant to the terms of the contract, each sold account must satisfy certain conditions to qualify for purchase ("Qualifying Accounts").

22.     Each contract has an Exhibit A setting forth the details of the accounts purchased with the total recurring monthly revenue for each.

23.     Each Qualifying Account must satisfy all conditions for at least one year after purchase.

24.     If, during the first year, one or more of the accounts fail to qualify for purchase, Defendant Republic could either replace the lost account or return the money it received for the lost account.

25.     The recurring monthly revenue for all original accounts and replacement accounts must be equal to or greater than the recurring monthly revenue on Exhibit A to the APSAs.

26.     Plaintiff has lost so many Qualifying Accounts during the one year period after each respective APSA that Defendant Republic has been unable to replace them with new accounts or return the consideration paid.

27.     As a result, the recurring monthly revenue to Plaintiff is far less than the amount Republic promised under the APSAs.

28.     Defendant's breach of its obligations to furnish enough Qualifying Accounts, and hence recurring monthly revenue due under the APSAs, has caused

---

[2]  The agreements contain terms AFA considers confidential and proprietary. Plaintiff has not attached the agreements to the Complaint but will likely submit them to the court under a motion to seal at the appropriate time.

Plaintiff financial damages in an amount not less than $2.47 million.

### Defendants Transfer Bogus Accounts

29.     Republic, acting by and through its President, Defendant Saysanam, sold multiple accounts to AFA that do not and have never existed.

30.     Republic represented in the APSAs that it provided AFA with "true and complete copies of all signed contracts" for customers in the Portfolio.

31.     Based upon information and belief, Saysanam caused Republic to fabricate contract documents ("Bogus Accounts") for customers that never existed, such as "Jaime Alfaro" or "DSI Partners."

32.     Saysanam knew the fabricated contracts on the Bogus Accounts were not authentic and contained false material representations of fact, such as the existence of the customer, the existence of a valid agreement, or the existence of a promise to pay by the customer.

33.     Saysanam presented the Bogus Accounts to AFA for purchase, intending for AFA to rely on the false representations of fact contained in the fabricated contracts.

34.     AFA relief on Defendants' representation that the fabricated contracts were legitimate and purchased the Bogus Accounts in reliance on same.

35.     AFA paid money to Defendant Republic in exchange for the Bogus Accounts.

36.     In addition, Saysanam caused Republic to "sell" accounts to AFA with the fraudulent intention of taking the account back so Republic could resell the account to another funding company (hereinafter "Scam Accounts"). Saysanam and Republic kept the proceeds of the "sale" of the Scam Accounts with no intention of either replacing the

Scam Account or returning the proceeds.

37.     AFA has been damaged in an amount in excess of $75,000 as a result of its purchase of the Bogus and Scam Accounts.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract as to Republic)

38.     Plaintiff incorporates by reference, repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

39.     Defendant sold customer accounts to AFA through the various APSA contracts.

40.     AFA has performed all of its obligations under the ASPA contracts.

41.      Defendant's failure to furnish enough Qualifying Accounts or return the consideration paid for the lost accounts constitutes a breach of the APSAs.

42.     Defendant's breach of the APSAs has proximately caused Plaintiff damages in an amount not less than $2,472,009.57

## SECOND CLAIM FOR RELIEF
### (Fraud as to both Defendants)

43.     AFA incorporates by reference, repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

44.     Defendant Republic, by and through the actions of Defendant Saysanam, made material misrepresentations of fact to Plaintiff.

45.     Defendants falsely presented the Bogus Accounts to Plaintiff as if they were authentic when, in fact, they were not.

46.     Defendants' misrepresentation was material to Plaintiff's decision on whether to purchase the Bogus Accounts.

47.     Defendants intended for Plaintiff to rely on the misrepresentations.

48.     Plaintiff did, in fact, rely on Defendants' misrepresentations to its detriment.

49.     Plaintiff has been damaged in amount to be proven at trial as a result of its reliance on Defendants' misrepresentations.

50.     Defendants sold the Bogus Accounts to Plaintiff with the specific intent to injure Plaintiff and with actual malice as the Defendants knew that the Bogus Accounts would not produce any income for Plaintiff.

51.     In other words, Defendants created the fake accounts so they could literally steal money from Plaintiff.

52.     In addition, Defendants sold Scam Accounts to Plaintiff with the intention of reclaiming the Bogus Accounts for resale and keeping AFA's sale proceeds.

53.     Defendants' fraud entitles Plaintiff to recover its actual damages and punitive damages from Defendants, jointly and severally.

### THIRD CLAIM FOR RELIEF
### (Fraudulent Transfer)

54.     AFA realleges paragraphs 1-53 in support of this claim for relief.

55.     Republic has transferred substantial amounts of cash to Saysanam as evidenced by Saysanam's lavish lifestyle in light of his company's inability to pay its debts.

56.     Republic transferred cash to Saysanam with actual intent to hinder, delay,

or defraud Republic's creditors, including AFA.

57.     In the alternative, Republic transferred cash to Saysanam without receiving a reasonably equivalent value in exchange for the cash transfer and Republic:

      a.     was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or intended to incur, or

      b.     believed or reasonably should have believed that it would incur, debts beyond Republic's ability to pay as they became due.

58.     In the alternative, Republic transferred substantial amounts of cash to Saysanam without receiving a reasonably equivalent value in exchange for the transfer and Republic was insolvent at that time or Republic became insolvent as a result of the cash transfers.

59.     As a result of Republic's fraudulent transfers of cash to Saysanam, AFA is entitled to:

    a.     avoidance of the transfer or obligation to the extent necessary to satisfy the claims for relief alleged in this lawsuit;

    b.     an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; and

    c.     subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

        i.     an injunction against further disposition by Republic and Saysanam, or both, of the asset transferred or of other property;

        ii.     appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

iii.   any other relief the circumstances may require.

## **Prayer for Relief**

WHEREFORE, AFA demands judgment against Defendants, jointly and severally, for the following relief:

1.      Judgment for compensatory damages in an amount to be shown at trial;

2.      Judgment for punitive damages against both Defendants;

3.      Equitable relief and for Judgment as alleged in the Third Claim for Relief;

4.      Judgment for AFA's reasonable attorneys' fees pursuant to the attorney fee provisions contained in the APSA or as allowed by law;

5.      Judgment for interest and taxable costs; and

6.      Such other relief as this Court deems just and equitable, including all relief requested in the various Claims for Relief themselves.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to each issue set forth herein.

This the 26th day of December, 2018.

s/Brett Dressler
TX 24007126
Sellers, Ayers, Dortch & Lyons, PA
301 S. McDowell, Suite 410
Charlotte, NC  28204
704-377-5050
704-927-2868 FAX
bdressler@sellersayers.com